**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **WILLIAM LOPRESTI, Individually and as parent and natural guardian of G.L. and E.L., minor children,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **CIVIL ACTION FILE** |
| | ) **NO.: ____________** |
| **TEXAS ROADHOUSE, INC.,** | ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) |

**PLAINTIFF'S COMPLAINT**

COMES NOW, Plaintiff, William LoPresti, Individually and as parent and natural guardian of G.L. and E.L.., minor children, who, by and through his attorneys, and shows the following Complaint against Defendant Texas Roadhouse, Inc.:

**PARTIES**

1. The Plaintiff, William LoPresti and his minor children, G.L. and E.L., are residents of Kennesaw, Cobb County, Georgia. The Plaintiff resides within the jurisdiction of this Court and is a citizen of the State of Georgia.

2. The Defendant Texas Roadhouse, Inc., is a Delaware corporation with a principal place of business located at 6040 Dutchmans Lane, Louisville, KY 40205. Therefore, Texas Roadhouse, Inc. is a citizen of the States of Delaware and Kentucky.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is

between citizens of different states, and because the Defendant has certain minimum contacts with the State of Georgia such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the Northern District of Georgia, Atlanta Division, is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims and causes action occurred in this judicial district, and because the Defendant is subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

### Prior Outbreaks Linked to Lettuce and Other Leafy Greens

5. *E. coli* O157:H7 outbreaks associated with lettuce and other leafy greens are by no means a new phenomenon. Outlined below is a list of *E. coli* outbreaks involving contaminated lettuce or leafy greens:

| Date | Causative Agent | Illnesses Reported | Source |
|---|---|---|---|
| Nov. 2017- Dec. 2017 | E. coli O157:H7 | 41, 1 death | Romaine lettuce |
| Dec. 2015-Jan. 2016 | Listeria monocytogenes | 19, 1 death | Package salads |
| Apr. 2015 | Escherichia coli, Shiga toxin-producing | 7 | Prepackaged leafy greens |
| Mar. 2015 | E. coli O157:H7 | 12 | Leafy greens |
| Jul. 2014 | E. coli O111 | 15 | Salad/cabbage served at Applebee's and Yard House (Minnesota) |
| Oct. 2013 | E. coli O157:H7 | 33 | Pre-packaged salads and sandwich wraps (California) |

| Jul. 2013 | E. coli O157:H7 | 94 | Lettuce served at Federico's Mexican Restaurant |
|---|---|---|---|
| Jul. 2013 | Cyclospora | 140 (Iowa); 87 (Nebraska) | Salad mix, cilantro |
| Dec. 2012 – Jan. 2013 | E. coli O157:H7 | 31 | Shredded lettuce from Freshpoint, Inc. |
| Oct. 2012 | E. coli O157:H7 | 33 | Leafy greens salad mix (Massachusetts) |
| Apr. 2012 | E. coli O157:H7 | 28 | Romaine lettuce |
| Dec. 2011 | Salmonella Hartford | 5 | Lettuce; roast beef |
| Dec. 2011 | Norovirus | 9 | Lettuce, unspecified |
| Oct. 2011 | E. coli O157:H7 | 58 | Romaine lettuce |
| Oct. 2011 | E. coli O157:H7 | 26 | Lettuce |
| Aug. 2011 | N/A | 8 | Lettuce; onions; tomatoes |
| Jul. 2011 | Cyclospora cayatenensis | 99 | Lettuce based salads |
| Jun. 2011 | Norovirus | 23 | Garden salad |
| Apr. 2011 | Salmonella Typhimurium | 36 | Multiple salads |
| Feb. 2011 | Norovirus | 24 | Garden salad |
| Jan. 2011 | Norovirus | 93 | Lettuce; salad, unspecified |
| Jul.-Oct. 2010 | Salmonella Java | 136 | Salad vegetable |
| May 2010 | E. coli O145 | 33 (26 lab-confirmed) | Romaine Lettuce grown in Arizona |
| Apr. 2010 | Salmonella Hvittingfoss | 102 | Lettuce, tomatoes, and olives served at Subway restaurants |
| Jan. 2010 | E. coli | 260 | Lettuce grown in France |
| Dec. 2009 | Norovirus | 16 | Lettuce |
| Aug. 2009 | Salmonella Typhimurium | 27 | Lettuce |

| | | | |
|---|---|---|---|
| Aug. 2009 | Salmonella spp | 124 | Romaine lettuce; Recalls issued by Tanimura & Antle, Inc. (lettuce), Muranaka Farm, Inc. (parsley), and Frontera Produce (cilantro) |
| Jul. 2009 | Salmonella Typhimurium | 145 | Shredded lettuce from Taylor Farms |
| May. 2009 | Norovirus | 10 | Lettuce, onion, and tomato in chicken salad |
| Nov. 2008 | E. coli O157:H7 | 130 | Romaine lettuce |
| Oct. 2008 | E. coli O157:H7 | 2 | Chopped shredded iceberg lettuce (Michigan) |
| Oct. 2008 | E. coli O157:H7 | 43 (Johnathan's Family Restaurant), 21 (Little Red Rooster Restaurant), 12 (M.T. Bellies Restaurant) | Lettuce |
| Oct. 2008 | Norovirus | 64 | Tomato relish, lettuce-based salad |
| Aug.-Sep. 2008 | E. coli O157:H7 | 74 | Lettuce from Aunt Mid's Produce Company (California) |
| Aug.-Oct. 2008 | E. coli O157:H7 | 13 | Spinach (Oregon) |
| May. 2008 | E. coli O157:H7 | 10 | Prepackaged lettuce |
| May. 2008 | E. coli O157:H7 | 6 | Pre-packaged salad |
| May 2008 | E. coli O157:H7 | 9 | Lettuce (California) |
| Apr. 2008 | Salmonella Branderup | 12 | Green salad, tomato |
| Jul. 2007 | Shigella sonnei | 72 | Salad |
| Jul. 2007 | E. coli O157:H7 | 26 | Lettuce |
| Feb. 2007 | Norovirus | 8 | Lettuce |
| Jan. 2007 | Norovirus | 9 | Salad |

| | | | |
|---|---|---|---|
| Nov. 2006 | E. coli O157:H7 | 78 | Lettuce |
| Oct. 2006 | E. coli O157:H7 | 205 | Pre-packaged baby spinach from Dole Food Company (California) |
| Sep. 2006 | Norovirus | 9 | Salad |
| Sep. 2005 | E. coli O157:H7 | 34 | Prepackaged bagged lettuce from Dole Food Company |
| Jun. 2006 | Salmonella Typhimurium | 18 | Lettuce, tomatoes |
| Oct. 2005 | E. coli O157:H7 | 12 | grapes, green; lettuce, prepackaged |
| Nov. 2004 | E. coli O157:H7 | 6 | Lettuce, unspecified |
| Jul. 2004 | Salmonella Newport | 97 | Iceberg lettuce |
| Nov. 2003 | E. coli O157:H7 | 19 | Spinach, unspecified |
| Oct. 2003 | E. coli O157:H7 | 16 | Spinach, unspecified |
| Sep. 2003 | E. coli O157:H7 | 51 | Lettuce-based salads, unspecified |
| Nov. 2002 | E. coli O157:H7 | 60 | Romaine lettuce |
| Jul. 2002 | E. coli O157:H7 | 32 | Romaine lettuce from Spokane Produce (Washington) |
| Jul. 2002 | E. coli O157:H7 | 55 | Caesar salad |
| Nov. 2001 | E. coli O157:H7 | 20 | Lettuce-based salads, unspecified |
| Oct. 2000 | E. coli O157:H7 | 6 | Salad |
| May 2000 | Campylobacter jejuni | 13 | Salad |
| May 2000 | Norovirus | 3 | Salad |
| Feb. 2000 | Norovirus | 7 | Salad |
| Oct. 1999 | E. coli O157:H7 | 45 | Lettuce, salad |
| Oct. 1999 | E. coli O157:H7 | 47 | Salad |

| | | | |
|---|---|---|---|
| Oct. 1999 | Norovirus | 16 | Salad |
| Sep. 1999 | E. coli O157:H11 | 6 | Lettuce |
| Sep. 1999 | Norovirus | 115 | Lettuce |
| Sep. 1999 | E. coli O111:H8 | 58 | Salad |
| Aug. 1999 | Norovirus | 25 | Salad |
| May 1999 | Norovirus | 28 | Salad |
| Feb. 1999 | E. coli O157:H7 | 72 | Lettuce |
| May 1998 | E. coli O157:H7 | 2 | Salad |
| May 1996 | E. coli O157:H7 | 61 | Lettuce |
| Oct. 1995 | E. coli O153:H46 | 11 | Lettuce |
| Sep. 1995 | E. coli O153:H47 | 30 | Lettuce |
| Sep. 1995 | E. coli O157:H7 | 21 | Lettuce |
| Jul. 1995 | E. coli O153:H48 | 74 | Lettuce |

**The 2018 E. coli O157:H7 Outbreak Linked to Romaine Lettuce from Yuma**

6. As of May 8, 2018, 149 people infected with the outbreak strain of *E. coli* O157:H7 have been reported from 29 states. Alaska 8, Arizona 8, California 30, Colorado 2, Connecticut 2, Florida 1, Georgia 5, Idaho 11, Illinois 2, Kentucky 1, Louisiana 1, Massachusetts 3, Michigan 4, Minnesota 10, Mississippi 1, Missouri 1, Montana 8, New Jersey 8, New York 4, North Dakota 2, Ohio 3, Pennsylvania 20, South Dakota 1, Tennessee 1, Texas 1, Utah 1, Virginia 1, Washington 7, and Wisconsin 2. Six are reported ill in Canada.

7. Illnesses started on dates ranging from March 13, 2018 to April 25, 2018. Ill people range in age from 1 to 88 years, with a median age of 30. Sixty-five percent of ill people are female. Of 129 people with information available, 64 (50%) have been hospitalized,

including 17 people who developed hemolytic uremic syndrome, a type of kidney failure. One death was reported from California.

8. Illnesses that occurred after April 17, 2018, might not yet be reported due to the time it takes between when a person becomes ill with *E. coli* and when the illness is reported. This takes an average of two to three weeks.

9. State and local health officials continue to interview ill people to ask about the foods they ate and other exposures before they became ill. 102 (91%) of 112 people interviewed reported eating romaine lettuce in the week before their illness started. Most people reported eating a salad at a restaurant, and romaine lettuce was the only common ingredient identified among the salads eaten. The restaurants reported using bagged, chopped romaine lettuce to make salads. At this time, ill people are not reporting whole heads or hearts of romaine. Information collected to date indicates that chopped romaine lettuce from the Yuma, Arizona growing region could be contaminated with *E. coli* O157:H7 and could make people sick.

10. Federal and state public health officials continue to investigate this outbreak. Among other things, these investigators are currently trying to determine the precise location(s) at which the contaminated lettuce was grown and/or processed.

**<u>*E. coli* O157:H7 Infection and Hemolytic Uremic Syndrome</u>**

11. *Escherichia coli* is the name of a common family of bacteria, most members of which do not cause human disease. *E. coli* O157:H7 is a specific member of this family that can cause bloody diarrhea (hemorrhagic colitis) in humans. In the years since *E. coli* O157:H7 was first identified as a cause of diarrhea, this bacterium has established a reputation as a significant public health hazard.

12.     *E. coli* O157:H7 lives in the intestines of cattle and other ruminants.  *E. coli* O157:H7 is also notable among pathogenic bacteria for its extremely low infectious dose—that is, the number of bacteria necessary to induce infection in a person.  While for most pathogenic bacteria it takes literally millions of bacterial colonies to cause illness, it is now known that fewer than 50 *E. coli* O157:H7 bacteria can cause illness in a child.  The practical import is that even a microscopic amount of exposure can trigger a devastating infection.

13.     The most severe cases of the *E. coli* O157:H7 infection occur in young children and in the elderly, presumably because the immune systems in those age populations are the most vulnerable.  After a susceptible individual ingests *E. coli* O157:H7, the bacteria attach to the inside surface of the large intestine and initiates an inflammatory reaction of the intestine.  What ultimately results is the painful bloody diarrhea and abdominal cramps characteristic of the intestinal illness.

14.     The mean incubation period (time from ingestion to the onset of symptoms) of *E. coli* O157:H7 is estimated to be two to four days (range, 1-21 days).  Typically, a patient with an acute *E. coli* O157:H7 infection presents with abdominal cramps, bloody diarrhea, and vomiting.  The duration of diarrhea in children with *E. coli* O157:H7 infections are significantly longer than that of adults.

15.     *E. coli* O157:H7 can produce a wide spectrum of disease from mild, non-bloody diarrhea, to severe bloody diarrhea accompanied by excruciating abdominal pain to life-threatening complications.  In most infected individuals, the intestinal illness lasts about a week and resolves without any long-term effects.  Antibiotics do not appear to aid in combating these infections, and recent medical studies suggest that antibiotics are contraindicated for their risk of

provoking more serious complications. Apart from good supportive care, which should include close attention to hydration and nutrition, there is no specific therapy.

16. About 10% of individuals with *E. coli* O157:H7 infections (mostly young children) go on to develop hemolytic uremic syndrome (HUS), a severe, potentially life-threatening complication. The essence of the syndrome is described by its three central features: destruction of red blood cells, destruction of platelets (those blood cells responsible for clotting), and acute renal failure due to the formation of micro-thrombi that occlude microscopic blood vessels that make up the filtering units within the kidneys.

17. There is no known therapy to halt the progression of HUS. The active stage of the disease usually lasts one to two weeks, during which a variety of complications are possible. HUS is a frightening illness that even in the best American medical facilities has a mortality rate of about 5%. The majority of HUS patients require transfusion of blood products and develop complications common to the critically ill.

**<u>G.L.'s and E.L.'s Injuries</u>**

18. On or about April 8, 2018, G.L. and E.L. consumed romaine lettuce from the Yuma, Arizona growing region in side salads at the Texas Roadhouse restaurant located at 2475 Barrett Creek Pkwy., Marietta, GA 30066. The romaine lettuce was contaminated by *E. coli* O157:H7 bacteria, leading to G.L.'s and E.L.'s *E. coli* O157:H7 infections and related injuries.

19. G.L. and E.L. began feeling ill around April 10, 2018. They both experienced fevers, agonizing abdominal cramps, vomiting, and bloody diarrhea.

20. On April 13, 2018, E.L.'s parents took her to WellStar Pediatric Center. E.L. was transferred to Children's Healthcare of Atlanta - Sottish Rite Hospital that same day, where she was admitted for ongoing treatment from April 13, 2018 through April 17, 2018.


21. G.L. also required professional medical attention for her symptoms and sought treatment on multiple occasions from WellStar Pediatric Professionals.

22. G.L. and E.L. continue to recover as of the date of this Complaint.

## CAUSES OF ACTION

### COUNT I - BREACH OF WARRANTY

23. The Plaintiff incorporates by reference and makes a part of this count each and every foregoing paragraph of this Complaint.

24. Defendant produced, distributed, and sold the contaminated food product that injured G.L. and E.L., and caused their *E. coli* O157:H7 infections. The Defendant is, therefore, a manufacturer, distributor, and seller of an adulterated food product, and the adulterated food product reached G.L. and E.L. without substantial change from the condition in which it was sold by the Defendant.

25. The Defendant is subject to liability to the Plaintiff for its breaches of express and implied warranties made to Plaintiff, G.L. and E.L. with respect to the food product sold to them, including the implied warranties of merchantability and of fitness for a particular use. Further, the Defendant expressly warranted, through its sale of food to the public, and by the statements and conduct of its employees and agents, that the food product ultimately sold to Plaintiff was fit for human consumption, and not otherwise adulterated or injurious to health.

26. The food product sold by the Defendant and ultimately consumed by G.L. and E.L., which product was contaminated with *E. coli* O157:H7 and related filth and adulteration, would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

27. The Plaintiff further alleges that the contaminated food sold by the Defendant and consumed by G.L. and E.L. was not fit for the uses and purposes intended by either Plaintiff, G.L. and E.L. or the Defendant, *i.e.,* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

28. As a further direct and proximate result of the conduct of Defendant and its agents, servants, and/or employees as aforesaid, G.L. and E.L. suffered *E. coli* O157:H7 infections and the adverse effects associated with the same, as described in previous paragraphs of this complaint.

29. As a further direct and proximate result of the conduct of Defendant and its agents, servants, and/or employees, G.L. and E.L. were forced to endure great pain, suffering, and inconvenience and may endure the same in the future. They were forced to submit to medical, medicinal, and therapeutic care and may be forced to submit to the same in the future.

30. As a further direct and proximate result of the conduct of Defendant and its agents, servants, and/or employees, G.L. and E.L. suffered an inability to perform the activities of daily living or some of them.

31. As a further direct and proximate result of the conduct of Defendant and its agents, servants, and/or employees, Plaintiff William LoPresti was forced to expend sums of money for doctors, hospitals, and/or other items necessary for the proper care and treatment of his minor children.

## COUNT II

## STRICT LIABILITY

32. The Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

33. The Defendant owed a duty to Plaintiff, G.L. and E.L. to manufacture and sell only food that was not adulterated, was fit for human consumption, was reasonably safe in construction, and was free of pathogenic bacteria or other substances injurious to human health. The Defendant breached this duty.

34. The Defendant owed a duty to Plaintiff, G.L. and E.L. to provide adequate warnings about the non-obvious danger of its food products, including warnings and instructions indicating that the food might contain pathogenic bacteria, including *E. coli* O157:H7. The Defendant breached this duty.

35. The Defendant owed a duty to Plaintiff, G.L. and E.L. to prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable and ordinary consumer. The Defendant breached this duty.

36. Because the food that Plaintiff, G.L. and E.L. purchased and consumed was adulterated, not fit for human consumption, not reasonably safe in design and construction, lacked adequate warnings and instructions, and was unsafe to an extent beyond that contemplated by the ordinary consumer, the Defendant is liable to the Plaintiff for the harm proximately caused by its manufacture and sale of contaminated and adulterated food products, and as such the Defendant is strictly liable to Plaintiff for such harm.

**COUNT III**

**NEGLIGENCE**

37. Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

38. The Defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food

products that injured Plaintiff's minor children, including the applicable provisions of the Federal Food, Drug and Cosmetic Act, and similar Georgia food and public health statutes, including without limitation the provisions of the Georgia Food Act, O.C.G.A. § 26-2-20, *et seq.*, all of which prohibit the manufacture and sale of any food that is adulterated, or otherwise injurious to health.

39. The food product that Defendant manufactured and sold, and that the Plaintiff, G.L. and E.L. purchased and consumed, was adulterated within the meaning of the federal Food, Drug and Cosmetic Act, and similar Georgia statutes, because it contained a deleterious substance that rendered it injurious to health, *i.e.*, *E. coli* O157:H7 bacteria.

40. The Defendant violated federal, state, and local food safety regulations by its manufacture and sale of adulterated food. These federal, state, and local food safety regulations are applicable here, and establish a positive and definite standard of care in the manufacture and sale of food. The violation of these regulations constitutes negligence as a matter of law.

41. The Plaintiff, G.L. and E.L. are in the class of persons intended to be protected by these statutes and regulations, and Plaintiff, G.L. and E.L. were injured as the direct and proximate result of the Defendant's violation of applicable federal, state, and local food safety regulations.

42. The Defendant was negligent in the manufacture, distribution, and sale of a food product that was adulterated with *E. coli* O157:H7, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided.

43. Once the Defendant learned, or in the exercise of reasonable care should have learned, of the dangers associated with preparing and selling food, including, but not limited to,

cross-contamination between foods, and the dangers associated with improperly cleaned or washed food, it had a duty to warn Plaintiff, G.L. and E.L., but failed to do so.

44. The Defendant had a duty to use supplies and raw materials in producing its food products that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from reliable sources; and that were clean, wholesome, free from adulteration and fit for human consumption, but failed to do so, and therefore breached that duty.

45. The Defendant was negligent in the selection of its suppliers, or other agents or subcontractors, and failed to adequately supervise them, or provide them with adequate standards, and, as a result, produced and sold food that was adulterated with *E. coli* O157:H7.

46. The Defendant had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation and sale of its food products, to ensure compliance with the Defendant's operating standards and to ensure compliance with all applicable health regulations. The Defendant failed to properly supervise, train, and monitor these employees engaged in the manufacture, preparation and delivery of the food product ultimately sold to Plaintiff, G.L. and E.L., and thus breached that duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

a. Judgment for the Plaintiff against the Defendant for just compensation in a fair and reasonable amount for the damages above set forth; and

b. Such additional and/or further relief, including interest, costs, and reasonable attorney fees, as this Court deems just and equitable.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**MORAITAKIS & KUSHEL, LLP**

/s/ *Glenn E. Kushel*
GLENN E. KUSHEL
Georgia State Bar No.: 430498

Glenridge Highlands One
5555 Glenridge Connector
Suite 550
Atlanta, GA 30342

404-261-0016
Fax: 404-261-0024
Email: glenn@mktriallaw.com

**MARLER CLARK, LLP, PS**

/s/ *William D. Marler*
WILLIAM D. MARLER
Washington State Bar No.: 17233
(*Application to Appear Pro Hac Vice to be filed upon receipt of Civil Action File Number)*

1012 First Avenue
Fifth Floor
Seattle, WA 98104

800-884-9840
Fax: 206-346-1898
Email: bmarler@marlerclark.com

Attorneys for Plaintiff